UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
———

LAWRENCE A. THOMAS #215322,

                 Plaintiff,                       Case No. 2:08-cv-96

v.                                             Honorable Robert Holmes Bell

JAMES ARMSTRONG, et al.,

                 Defendants.

_____/

## REPORT AND RECOMMENDATION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

## Discussion

I.      Factual allegations

Plaintiff Lawrence A. Thomas #215322, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Manager James Armstrong, Food Service Director Herbert Barry, Assistant Deputy Warden William ondreau, Assistant Deputy Warden William Luetzow, Warden Gregory McQuiggin, Doctor Fernando Frontera, Nurse Practitioner David Gwinn, Health Care Manager Gloria Hill, Michelle Horton, R.N., Nancy Hulkoff, R.N., Carrie Hyrkas, R.N., Betty Kotila, R.N., Richard Miller, P.A., Anne Morin, R.N., Nurse Practitioner Brenda Parker, and Chief Medical Officer George Pramstaller.

In his complaint, Plaintiff seeks a basketball for each yard / cage, full access cable television, and "make up" yard time to total five days of yard a week to make up for times that are cancelled due to inclement weather.  In addition, Plaintiff complains that vegetarians are penalized "when menu call for a breakfast meat every Saturday and week 2 / cycle A-2 Monday" because a peanut butter supplement is not supplied for vegetarian prisoners as required by policy.  Plaintiff further claims that vegetarian prisoners are shorted on a number of items.  Plaintiff also seeks oversight of the use of punitive segregation on prisoners at AMF.

Plaintiff claims that Defendant Frontera improperly denied him "hive medication," such as Benadryl and Atarax, as well as Tylenol, Motrin, Metamucil, and other over the counter medications.  Plaintiff states that he has suffered from hives on numerous occasions, which are extremely itchy and uncomfortable.  Plaintiff filed a grievance regarding the alleged denial of medication and the step I response indicates that Plaintiff had been evaluated by the medical service provider on June 20, 2005, July 8, 2005, August 25, 2005, and November 17, 2005.  In addition,

Plaintiff alleges that the response states that the medical service provider had reviewed the medical

record on June 15, 2005 and June 23, 2005, and had determined that Benadryl and / or Atarax were

not indicated and prescribed nasal spray, Guaifenesin, Bactrim and artificial tears.   The step II

response to AMF-05-06-01710-12E3, which is attached to Plaintiff's complaint, states:

> Investigation reveals on June 15, 2005, the nurse spoke with the patient after she picked up his health care request.   In the request, the patient complained of hives.   The nurse determined the patient did not have hives at the time.   The patient refused further evaluation.   A health care request was processed on June 13th for a refill of Benadryl, but the patient did not complain of hives.   The [medical service provider] has determined Benadryl is not indicated for the patient at this time.   Review of the housing unit log and health service urgent emergent log indicates no phone calls were placed or received on the June 13th regarding the patient's complaint of hives.

*(See* August 4, 2005 step II response to AMF-05-06-01710-12E3, attached to Plaintiff's complaint.)

In addition, the allegations in Plaintiff's complaint show that he filed grievances

asserting that he has been forced to use antihistamines from the prisoner store, but that he is unable

to purchase them in a sufficient amount, so that he is forced to trade with other prisoners in order to

obtain enough antihistamines.   The step II response to AMF-06-01-00091-12F indicates that Plaintiff

had been scheduled to be evaluated by the nurse on December 22, 2005, January 11, 2006, and

January 30, 2006, but that Plaintiff refused to be seen on each occasion.   The step II response also

lists Plaintiff's medications as nasal spray and artificial tears for his allergy symptoms, as well as

Maalox, Metamucil, and Motrin, and states that Plaintiff was encouraged to allow the nurse to assess

him if his medications did not improve his symptoms.   *(See* February 17, 2006 step II response to

AMF-06-01-00091-12F, attached to Plaintiff's complaint.)   Plaintiff complains that the nasal spray

and the artificial tears do nothing to address his hives.   When Plaintiff asked for antihistamines, he

was told to buy them from the store, but Plaintiff only receives $10.00 a month for hygiene items and over the counter medications.

Plaintiff also claims that he suffered a fracture of his right ulna and a traumatic injury to his right knee in 1991.  Plaintiff had both injuries repaired, but it appears from the attachments to Plaintiff's complaint that his fractured ulna failed to heal properly and that he developed chronic degeneration of the right knee.  On October 30, 1991, an open reduction, internal fixation with plate screws, and a bone graft were performed on Plaintiff's right ulna.  According to the step III grievance response to AMF-05-07-01855, Plaintiff was seeking to have the plate and screws in his arm removed.  An x-ray had been done showing no changes in the arm or shifting of the appliance or loosening of the screws.  Plaintiff was seen by the medical service provider on July 8, 2005, and was told that an appointment with a specialist was not indicated.  *(See* September 6, 2005 step III response to AMF-05-07-01855, attached to Plaintiff's complaint.)

According to another step III response dated May 30, 2007, Plaintiff was complaining that the nurse did not respond appropriately to his request for medication while she was making segregation rounds.  Defendant Armstrong was the respondent and noted:

> As noted, the nurse does not dispense medication.  The record reflects that the grievant has not been cooperative regarding health care call outs.  Grievant is encouraged to submit a health care request for his medication needs and to cooperate with health care staff so his needs can be addressed.

(*See* May 30, 2007 Step III response to AMF-07-02-00615, attached to Plaintiff's complaint.)

The undersigned notes that another step II response dated April 23, 2007, indicates that Plaintiff was evaluated by the nurse on January 18, 2007, January 25, 2007, February 7, 2007, February 9, 2007, and February 22, 2007.  (*See* April 23, 2007, step II response to AMF-07-03-00807-12E3, attached to Plaintiff's complaint.)  On April 27, 2007, Defendant Hyrkas responded

to a health care request by advising Plaintiff to purchase antacids and Loratadine for his sinuses. Plaintiff was told that Loratadine is equivalent to Claritin and may be used along with Plaintiff's nasal spray for added relief.  (*See* April 27, 2007, Medical Kite Response, attached to Plaintiff's complaint.)  The undersigned notes that Plaintiff offers numerous similar attachments showing that he repeatedly complained about the various medical interventions he received, the medications he was prescribed, and the numerous evaluations by health care professionals he received during his incarceration.

Plaintiff claims that he was improperly left in punitive segregation for four and a half days after the expiration of his disciplinary sentence.  Plaintiff appears to be claiming that Defendants' conduct violated his rights under the Eighth and Fourteenth Amendments.  Plaintiff seeks damages, as well as declaratory and injunctive relief.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the undersigned notes that the denial of a basketball for each yard / cage, full access cable television, and "make up" yard time to total five days of yard a week to make up for

times that are cancelled due to inclement weather does not rise to the level of an Eighth Amendment violation.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff contends that he was kept in punitive segregation for four and a half days longer than he should have been.  To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the Due Process Clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit repeatedly has found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest.  *See Jones*, 155 F.3d at 812-23 (considering two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (involving inmate serving

a life sentence who was placed in segregation after serving thirty days of detention for a misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Although plaintiff states that his placement in segregation had been "atypical and significant," he merely uses the legal jargon and presents no factual allegations to support his conclusion. The only allegation he presents regarding his segregation is that its duration has been for four and a half days longer than his sentence. The Sixth Circuit has recognized that duration alone may, in extreme circumstances, cause administrative segregation to rise to the level of an "atypical and significant" deprivation that implicates a protected liberty interest. *See Harden-Bey v. Rutter*, 524 F.3d 789 (6th Cir. 2008) (holding that allegations that a prisoner has been indefinitely confined to administrative segregation for more than three years states a procedural due process claim). Here, Plaintiff has alleged nothing approaching the length of segregation that the *Harden-Bey* court concluded was "atypical and significant" in its duration. Nor has Plaintiff alleged that the conditions under which he is being held constitute an atypical or significant hardship under *Sandin*. Consequently, the court concludes that no liberty interest is implicated by his placement.

Finally, Plaintiff appears to be claiming that Defendants violated his Eighth Amendment rights by failing to provide him with adequate health care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth

- 7 -

Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farme*r, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be
> said to constitute an unnecessary and wanton infliction of pain or to be
> repugnant to the conscience of mankind. Thus, a complaint that a

> physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). As noted above, Plaintiff has been regularly seen by medical personnel and has been the recipient of numerous medications and treatment. Plaintiff's complaint appears to be with regard

- 9 -

to the specific treatment given.  Such a claim does not rise to the level of an Eighth Amendment violation.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 24, 2008


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).